423 So.2d 1053 (1982)
STATE of Louisiana
v.
Clyde ROBINSON.
No. 82-KA-0320.
Supreme Court of Louisiana.
November 29, 1982.
Rehearing Denied January 7, 1983.
*1054 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Patrick G. Quinlan, Asst. Attys. Gen., for plaintiff-appellee.
Charles R. Brackin, Voelker, Ragland, Brackin & Crigler, Paul K. Kidd, Lake Providence, for defendant-appellant.
CALOGERO, Justice.
Clyde Robinson appeals his conviction of negligent homicide (La.R.S. 14:32) and his sentence to five years at hard labor. He was charged by an East Carroll Parish grand jury indictment filed March 28, 1979.[1] *1055 After the jury selection was completed, the defendant elected to be tried by the judge alone who found him guilty as charged on August 5, 1981. He was sentenced to "five years without suspension or parole at hard labor." Robinson urges eighteen assignments of error in support of this appeal.
We find merit only in assignment of error number 13 which complains that the sentence to five years at hard labor "without suspension or parole" was illegal. None of the remaining assignments of error present reversible error. Robinson's conviction is affirmed; his sentence insofar as it is "without suspension or parole" is illegal. The case will therefore be remanded to the trial court for resentencing according to law.
In this opinion we will treat, in addition to assignment of error number 13, assignments of error numbers 2, 6, 8, 9, 10, 11, 12, 14 and 18; the latter are without merit. None of the remaining assignments of error (assignments of error numbers 1, 3, 4, 5, 7, 15, 16 and 17) present reversible error, nor do they involve legal issues not governed by clearly established principles of law. They will be treated in an unpublished appendix which will comprise part of the record in this case.
The negligent homicide charge arose from the following facts. In the early morning hours of May 19, 1978, Robinson, a fifty-six-year-old black police juror for East Carroll Parish, went to the trailer of one Eartha Jean Lee, a young black woman with whom he had formed an eighteen month liason. He entered the unoccupied trailer and waited for Ms. Lee. Escorted by Ronnie Jones, Ms. Lee returned. When Robinson suddenly opened the door to the trailer, Jones excused himself and Ms. Lee entered the trailer. As the departing Jones turned the corner (approximately one block from the trailer), he heard the woman cry out, "Oh, Clyde!" followed by the sound of a shot. Ms. Lee was wounded by a bullet discharged from a .38 caliber pistol apparently brought into the trailer by Robinson. Robinson thereupon called the victim's mother and told her that Eartha Jean had been wounded in a struggle over a gun. After Eartha Lee's mother and sister arrived at the trailer, Robinson reiterated that he had not intended to kill her. When the police arrived, Clyde Robinson told a different story, narrating that the shot had been fired from outside the trailer while he and Ms. Lee were inside. Later that same morning, Robinson informed the sheriff that his original statement had been false; the evidence at trial does not indicate what if anything Robinson then further related concerning what had in truth occurred. The defendant made no further statement and did not testify at trial.
At trial the victim's mother testified as to defendant's statements concerning the struggle. Eartha's sister declared that Robinson had made statements that the shooting had been accidental. Expert witnesses indicated that it would have been virtually impossible for the victim to have been holding the gun when it fired. Ronnie Jones in his transcribed testimony from the preliminary hearing, stated that he had heard Eartha Lee cry out before the shot. A medical doctor's testimony supported that sequence of events; because of the heart wound inflicted by the bullet, she could not thereafter have cried out, according to the doctor. The sheriff testified that Robinson had admitted that his first statement accusing a third person outside the trailer had not been true.

ASSIGNMENTS OF ERROR NOS. 2 AND 6 DENIAL OF MOTIONS TO QUASH THE INDICTMENT
By this assignment Robinson contends that the trial court erred in denying his motion to quash the grand jury indictment for negligent homicide. Essentially defendant attacks the grand jury's impanelling on March 28, 1979 and its proceedings thereafter; he also claims that his not being *1056 advised of his Miranda rights on the day he testified the second time before the grand jury is a ground to quash the indictment.
As earlier related in this opinion defendant had originally been indicted for first degree murder. While this earlier case was pending, Judge Cliff Adams voluntarily recused himself on November 22, 1978. On motion of defendant, that first degree murder indictment was later quashed. Basically there were no criminal charges pending against Robinson by the beginning of 1979. The misdemeanor charges of negligent injury and false imprisonment were dismissed on March 28, 1979.
The same judge, Cliff Adams, who had earlier recused himself from Robinson's first degree murder case, ordered the grand jury which had been impanelled on February 5, 1979, into session on March 28, 1979, and he presided over the subsequent grand jury proceedings out of which arose the negligent homicide indictment.
Judge Adams had indeed been recused from the first degree murder case on November 22, 1978. However, the first degree murder indictment which was the basis of the proceeding from which he was recused had been quashed on December 5, 1978. The new grand jury was then impanelled on February 5, 1979. It was this grand jury which is the subject of defendant's allegations. Judge Adams ordered that the grand jury meet on March 28, 1979.[2]
The trial court in denying defendant's motion ruled that because the first charges against Robinson were dismissed, there was no relevant recusal outstanding on February 5, 1979 when the new grand jury was impanelled. Not having again been recused from any relevant case pending at the time, he had the power to order the grand jury into session. The Court also found that the order had been administrative only and not directed at defendant.
Defendant has not asserted a proper ground for quashing the indictment under La.C.Cr.P. arts. 532 or 533.[3]
As to Judge Adams' prior recusal and its effect upon his ordering the grand jury into session and his conducting the grand jury proceedings thereafter, we note that a recusal is limited to a "case." La.C.Cr.P. art. 671(5). The Official Revision Comment in discussing the fifth ground of La.C.Cr.P. *1057 art. 671[4] notes that the word "case" is limited to the particular criminal prosecution at bar. The effect of granting the motion to quash the earlier first degree murder charge was to end that case.
Since the indictment for first degree murder had been quashed and the ruling was not stayed, the case from which Judge Adams had recused himself had ended. There was no provision of law which barred Judge Adams from ordering the grand jury back into session.
Robinson also contends that the grand jury indictment should have been quashed because he was not advised of his Miranda rights prior to testifying before the grand jury on March 28, 1979. Robinson admits that he was so advised when he first went before the same grand jury on February 6, 1979. However he was not so advised on March 28th.
The District Attorney testified that he "believed strongly" that he advised Robinson of his Miranda rights before he testified on March 28th. However, he could not produce a signed waiver form for that day, which was normally used on such occasions. The jury foreman could not remember if Robinson was read his rights on March 28th, but said he saw no reason why he should have been since Robinson had been so advised before his first appearance before the grand jury.
Apparently Robinson was not advised of his rights prior to his March 28th testimony before the grand jury.
Arguably the Miranda warnings given Robinson prior to his testifying before the grand jury on February 6, 1979, would obviate any problems in connection with his not having been so warned about six weeks thereafter when he appeared before the Grand Jury on March 28, 1979.
We really need not however, rely on this cleansing of the potential error in his not having been advised on March 28, 1979. Even assuming the defendant was improperly not given Miranda warnings on March 28th, the indictment is not subject to being quashed for that reason. La.C.Cr.P. art. 442 states that "no indictment shall be quashed or conviction reversed on the ground that the indictment was based in whole or in part on illegal evidence ..."[5]
This same La.C.Cr.P. art. 442 proscription against quashing an indictment for the reason that it was based in whole or in part on illegal evidence also dictates our finding nonmeritorious defendant's contention in assignment of error number 6 that the indictment should be quashed because it was predicated on the "perjured testimony of Ronnie Jones." These assignments are without merit.
Defense assignments of error numbers 2 and 6 therefore lack merit.

ASSIGNMENT OF ERROR NO. 8 INTRODUCTION OF PRELIMINARY HEARING TESTIMONY
By this assignment, defendant contends that the trial court erred in permitting the state to introduce the transcribed testimony of Ronnie Jones, an absent witness who had testified at an earlier preliminary hearing. At the preliminary hearing conducted on the prior indictment for first degree murder, Jones testified that he had escorted Eartha Lee home from the bar the night she died. Upon seeing Robinson, Jones left. Rounding the corner on his way home, he heard Lee explain "Oh, Clyde!" followed by a shot.
Apparently Jones had on a different occasion recited a different sequence of eventsthe shot, followed by "Oh, Clyde!" The defense contends that Jones made contradictory *1058 statements on several matters after his preliminary examination testimony. The particulars as regards the ostensible contradictory statements do not appear in the evidentiary transcript. Ronnie Jones would likely have been more effectively impeached at trial than he had been at the preliminary hearing.
When testimony taken at a prior hearing or proceeding is to be used at trial, there must be an examination into whether there has been a violation of the defendant's constitutional rights, particularly the right to confrontation under the Sixth Amendment of the United States Constitution and art. I, § 16 of the Louisiana Constitution. State v. Sylvester, 343 So.2d 1020 (La.1977). This Court, in State v. Hills, 379 So.2d 740 at 743-44 (La.1980), in discussing the admission of such testimony, stated:
It is well settled that, before testimony given at a prior hearing may be introduced in evidence at a subsequent trial, without offending the confrontation and cross-examination clauses of the federal and state constitutions, certain conditions must be met: (1) defendant must have been represented by counsel at the earlier hearing; (2) the witness testified under oath; (3) the witness was cross-examined or else there was a valid waiver of the right to cross-examination; (4) at the time of the trial, the witness (whether out of state or not) is unavailable or unable to testify; and (5) the state has made a good faith diligent effort to obtain the presence of the witness, including by its out-of-state subpoena powers where appropriate. State v. West, 363 So.2d 513 (La.1978); State v. Kaufman, 304 So.2d 300 (La.1974), cert. denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1976). (emphasis provided)
The first three conditions are easily met. We focus our inquiry on the fourth and fifth. We ultimately find that these conditions were satisfied in the instant case.
La.C.Cr.P. art. 295 states that the transcript of testimony by a witness who testified at the preliminary hearing is admissible "in any subsequent proceeding in the case, on behalf of either party, if the court finds that the witness is dead, too ill to testify, absent from the state, or cannot be found, and that the absence of the witness was not procured by the party offering the testimony." Defendant contends that the trial on the charge of negligent homicide was not a subsequent proceeding "in the case," as relates to the preliminary hearing on the original indictment of first degree murder, later quashed, and that he was denied his right to cross-examine Jones with a focus on the elements of negligent homicide. However, both charges arose from the same nexus of facts; the charge of negligent homicide was related to the same facts surrounding the first degree murder charge. The facts were identical; the presence of the witness Jones and what he saw and heard were relevant, though not crucial, to both charges. Defense counsel had ample opportunity to cross-examine the witness at the preliminary examination.
Although the requirement of identity of issues between the former proceeding and the trial on the merits may be required, State v. Augustine, 252 La. 983, 215 So.3d 634 (1968), this Court has interpreted that identity pursuant to sections of McCormick [6] and Wharton[7] to mean only a "substantial" identity of issues. State v. Sylvester, supra.
However, to use the transcript under La.C.Cr.P. art. 295, the court must find that "the witness is dead, too ill to testify, absent from the state, or cannot be found, and that absence of the witness was not procured by the party offering the testimony." Therefore, genuine unavailability rather than simple absence from the state is the jurisprudential requirement to obviate constitutional confrontation problems. The United States Supreme Court in Ohio v. Roberts, 448 U.S. 56 at 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 at 613 (1980), stated:
The basic litmus of Sixth Amendment unavailability is established: "[A] witness *1059 is not `unavailable' for purpose of ... the exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." Barber v. Page, 390 U.S. [719] at 724-725, 88 S.Ct. 1318 at [1321-1322], 20 L.Ed.2d 255 (emphasis added). Accord, Mancusi v. Stubbs, [408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293], supra; California v. Green, 399 U.S. [149], at 161-162, 165, 167, n. 16, 90 S.Ct. 1930, [1936-1937, 1939], 26 L.Ed.2d 489; Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969).
This Court in State v. Sam, 283 So.2d 81 (La.1973), utilizing the opinion of Barber v. Page, supra, applied the principles enunciated by the United States Supreme Court to a Louisiana prosecution. We stated that there must be a showing of a good faith effort to secure the witness' presence before the testimony at a prior proceeding may be used at trial.
The state in the instant case did make attempts to secure the witness' presence at trial. There were four attempts by the sheriff's office to serve Jones with a subpoena at his grandmother's house. Inquiries were made concerning his whereabouts. An investigator with the Louisiana Attorney General's office located Jones in California living with his sister. The investigator called and spoke to the witness' mother, who informed him that Jones was leaving that same day to work in Alaska; the name and location of the firm were not known to her. The investigator explained the situation, offered to arrange for a flight back to Louisiana for the trial, and left a message for Ronnie Jones to call. Jones did not return the call. When a second call was made to the same number, the recipient disclaimed any knowledge of Jones. The prosecution concluded that this amounted to deception; no cooperation was forthcoming. Two sheriff's deputies and the state investigator testified that the absence of the witness was not procured by the state. (This is one of the prerequisites stated in La.C.Cr.P. art. 295.)
At trial the prosecutor testified that the state had not utilized the procedures under La.C.Cr.P. arts. 741-745 for obtaining witnesses from outside the state since he thought it would be a useless exercise after the state investigator's first call to the mother and the deception involved in the second call. He thus felt that the address in California discovered by the investigator was apparently no longer the witness' location. The circumstances of this case were unusualJones had been arrested for the crime initially, and had later been held as a material witness for the grand jury. The prosecutor thus felt that the deception implicit in the second telephone conversation showed that Jones would not cooperate. In his opinion Jones intended to run and perhaps with good reason. The prosecutor testified that any further attempts to locate the absent witness would have been useless. In the prosecutor's opinion Jones had made himself unavailable.
Although the United States Supreme Court mandates a diligent, good faith effort by the state, "[t]he law does not require the doing of a futile act." Ohio v. Roberts, supra, at 74, 100 S.Ct. at 2543, 65 L.Ed.2d at 613. The lengths to which the state must go to try to produce a witness is a question of reasonableness.[8]California v. Green, 399 U.S. 149 at 189-190 S.Ct. 1930, 1951-1952, 26 L.Ed.2d 489 at 514, n. 22 (1970) (Harlan's concurring opinion, citing Barger v. Page, supra).
Unlike the perfunctory attempts that were held not to constitute good faith efforts by this Court in State v. Jones, 325 So.2d 235 (La.1975) and State v. Sam, supra, the trial judge, in determining to admit the testimony, correctly found on the part of the state in this case a good faith attempt. We are unable to conclude under these unusual *1060 circumstances that the trial judge erred in her ruling in this regard.
We find this assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 9, 10 AND 18 DENIAL OF MOTIONS FOR ACQUITTAL, DIRECTED VERDICT AND NEW TRIAL
By these assignments defendant contends that it was error for the trial court to deny his motions for acquittal, directed verdict, and new trial based on the grounds that the evidence was insufficient to sustain the conviction of negligent homicide. La.R.S. 14:32 at the time of the charged crime stated:
Negligent homicide is the killing of a human being by criminal negligence.
The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
Whoever commits the crime of negligent homicide shall be imprisoned, with or without hard labor, for not more than five years.
To prove criminal negligence the state must show that the defendant conducted himself with "such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." La.R.S. 14:12.
Defendant contends that no evidence of negligent homicide was presented since nothing constituting gross negligence was shown by the state. Citing the pertinent cases, he states that if no evidence of the crime charged is found, this Court must enter a judgment of acquittal; he further declares that if the evidence fails to prove an essential element of the crime, the double jeopardy clause of the Fifth Amendment bars a second trial and therefore defendant must be discharged.
The evidence presented by the state, and upon which the trial judge relied in finding defendant guilty of negligent homicide, was the following:
The 56-year-old male defendant and much younger female victim were paramours; the victim was not home at her trailer residence at 2:00 a.m. since she had been out drinking; the defendant had gone to the victim's trailer in the early morning hours carrying a loaded pistol; the victim returned to the trailer with a young male escort; the defendant, inside the victim's darkened trailer, opened the trailer door; the young male escort departed; the victim entered the trailer; moments later the victim was heard to exclaim "Oh, Clyde!" followed by the sound of a shot; an expert testified that the bullet was discharged within eighteen to thirty-six inches of defendant's chest and that the victim could not have held the gun and pulled the trigger; a pathologist stated that the victim was shot through the heart at a downward angle; defendant himself had called the victim's mother and told her that Eartha had been shot during a tussle over a gun. When police arrived Robinson lied and later signed a fictionalized statement implicating a third person. Not until hours later, after another man had been arrested, did Robinson admit that the original statement was not correct.
Concerning sufficiency of evidence and circumstantial evidence, this Court just recently in State v. Graham, 422 So.2d 123 (La.1982) had this to say:
The Due Process Clause of the Fourteenth Amendment requires this court to review the evidence upon which a criminal conviction is based to determine whether it is minimally sufficient. A defendant has not been afforded due process, and his conviction cannot stand, unless, viewing the evidence in the light most favorable to the prosecution, any trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Additionally, we are governed by our statutory rule as to circumstantial evidence: assuming every fact to be proved that the evidence tends to prove, in order to convict, it *1061 must exclude every reasonable hypothesis of innocence. R.S. 15:438.
The trial judge found defendant guilty of negligent homicide upon the evidence presented by the state. She concluded that the evidence was sufficient under the foregoing standards to support a conviction for negligent homicide.
The state excluded every reasonable hypothesis of innocence. While there was no direct proof of murder or manslaughter (or precisely what took place in the trailer), there was, by the defendant's own incriminating admission to the victim's mother, the occurrence of at least an accidental shooting during a tussle over a gun. The least culpable state of affairs, and the one charged in the indictment and accepted by the trial judge as having been proven beyond a reasonable doubt, was the perpetration of negligent homicide since Mr. Robinson's actions that night at the very least constituted criminal negligence. Since the shot came moments after the victim's entry into the trailer, it is almost impossible to disassociate the shooting from the defendant's grossly negligent entering of the victim's trailer with a loaded pistol[9] under heated emotional circumstance in the early hours of the morning.
We find that the trial judge did not err in finding sufficient evidence to convict of negligent homicide. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime of negligent homicide beyond a reasonable doubt.
The assignment is without merit.

ASSIGNMENT OF ERROR NO. 11 ERROR IN THE PRESENTENCE HEARING
By this assignment Robinson contends that the trial court erred in the conducting of the presentence hearing. Defendant requested a presentence hearing on August 5, 1981; the hearing was actually held November 13, 1981. Defense counsel contends that Robinson had not been noticed until that very day and that counsel had not been afforded the opportunity to view the presentence investigation report until he had walked into the courthouse. However, counsel had brought along with him a written motion for a continuance claiming that the report contained false, prejudicial information which counsel was not prepared that day to rebut.
Robinson had known from the judge's previous statements that the report had arrived at the time that the judge set the date for the hearing. The judge denied the motion stating that defense counsel had chosen not to come to examine it in order to prepare for the hearing. The jurisprudential cautions relating to presentence reports were heeded by the judge in this case: defendant had access to the report on which the sentence would be based; a hearing was held in which defendant was given an opportunity to deny or explain adverse information which was false or misleading even by means of calling rebuttal witnesses. See State v. Phillips, 391 So.2d 1155 (La.1980); State v. Richardson, 377 So.2d 1029 (La. 1979); State v. Bosworth, 360 So.2d 173 (La.1978).
The granting or denying of a motion for a continuance is discretionary. La.C.Cr.P. art. 712. The denial of a continuance on grounds of counsel's lack of preparedness does not warrant reversal unless specific prejudice resulting from the denial can be demonstrated. State v. Haarala, 398 So.2d 1093 (La.1981). Defendant has failed to demonstrate specific prejudice resulting from the denial; the trial court did not abuse its discretion. This assignment is without merit.

*1062 ASSIGNMENT OF ERROR NO. 12 ERROR IN NOT FOLLOWING SENTENCING GUIDELINES
By this assignment defendant contends that the trial court erred in not following the sentencing guidelines of La.C. Cr.P. art. 894.1. The trial court must, of course, follow the procedures set out in La.C.Cr.P. art. 894.1. That statute requires that the trial court state for the record the factors considered along with the factual bases supporting those considerations in the judge's decision to impose the particular sentence upon the individual. State v. Bourgeois, 406 So.2d 550 (La.1981); State v. Touchet, 372 So.2d 1184 (La.1979). Under the article the sentence must be individualized; the sentence must be adapted to the offender as well as the offense using specific factual determinations. State v. Jackson, 360 So.2d 842 (La.1978).
A review of the record indicates that the trial court adequately complied with the sentencing guidelines of La.C.Cr.P. art 894.1. Providing a factual basis for her sentencing considerations, the trial judge systematically reviewed every aggravating and mitigating circumstance set forth in the sentencing guidelines. The court found that the defendant had abused his considerable position and reputation in the community, that he had "shown a disregard of law and ethics" most clearly demonstrated by "being dishonest enough to let another man take the wrap (sic) for the crime," that he had killed the victim due to jealousy which might well reoccur in the future. At the same time the court acknowledged that the defendant had held many prominent positions and he had been well respected in the community; the court noted his excellent references. In the court's view, however, those considerations did not outweigh the fact that "[h]e killed Eartha Lee, and then he tried to throw the blame on an innocent man." Finding that the defendant's imprisonment would not be an excessive hardship to the family, the court stated that a lesser sentence would deprecate the seriousness of the crime. The record reflects that the trial court adequately considered the guidelines in particularizing the sentence to the defendant; the judge's determinations and considerations appear in the record. This assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 13 AND 14 ILLEGAL AND EXCESSIVE SENTENCE
By these assignments defendant contends that the trial court erred in sentencing him to an illegal and excessive sentence of five years "without suspension or parole at hard labor." Five years at hard labor is the maximum statutorily allowed penalty for the crime of negligent homicide; under La. R.S. 14:32 there is no provision for sentencing without benefit of probation, parole or suspension of sentence.
Pertinent to a discussion of permissible sentence, however, is La.C.Cr.P. art. 893.1, enacted in 1981 and effective as of September 11, 1981, a date which followed the commission of this crime on May 19, 1978. La.C.Cr.P. art. 893.1 provides:
When the court makes a finding that a firearm was used in the commission of a felony and when suspension of sentence is not otherwise prohibited, the court shall impose a sentence which is not less than:
(1) The maximum sentence provided by law, in the same manner as provided in the offense, if the maximum sentence is less than five years, or
(2) Five years, in the same manner as provided in the offense, if the maximum sentence is five years or more.
Imposition or execution of sentence shall not be suspended and the offender shall not be eligible for probation or parole.
Thus there are two provisions in article 893.1 which, if applicable to the 1979 conviction, would have bearing upon the sentence for a conviction of negligent homicide. If a firearm were used in the commission of the felony (negligent homicide) and when suspension of sentence is not otherwise prohibited, the court is mandated to impose a sentence which is not less than five years. The second pertinent provision is that imposition or execution of sentence shall not be *1063 suspended and the offender shall not be eligible for probation or parole.
The trial judge took into account the legislative policy evidenced by La.C.Cr.P. art. 893.1 in sentencing in this instance. In imposing the maximum sentence of five years, which independently of article 893.1 was within her discretion, the trial judge alluded to the legislative policy enacted after the commission of this crime. That consideration on her part was not legally inappropriate; that consideration and many others were pertinent in the exercise of her sentencing discretion. Furthermore, the transcript does not indicate that she imposed the five year sentence because she felt that she was compelled to do so by article 893.1.[10]
The trial judge exercised her broad discretion in sentencing the defendant to the maximum under the statute. Imposition of the maximum sentence was not grossly out of proportion to the seriousness of this crime. State v. Beavers, 382 So.2d 943 (La.1980); State v. Goode, 380 So.2d 1361 (La.1980). The mitigating factors of the defendant's age and his general community reputation as a law-abiding and hard working citizen do not reflect an abuse of discretion by the trial court in sentencing when weighed against the other circumstances of the case revealed in the presentence investigation. She decreed the statutory maximum. We conclude that she did not abuse her sentencing discretion; the sentence was not so disproportionate to the crime committed as to shock the Court's sense of justice. State v. Bonanno, 384 So.2d 355, 358 (La.1980). Assignment of error number 14, therefore, lacks merit.
There is an aspect of this sentence, however, which is illegal. The trial judge was not at liberty to impose a sentence in excess of that provided in La.R.S. 14:32 notwithstanding that following the commission of this crime, the legislature in article 893.1 provided pertinently to such crimes (committed after its enactment) that the sentence not be suspended and the defendant not be eligible for probation or parole. The trial judge was not at liberty to impose such a sentence in this case simply because of the expression by the legislature after the commission of this crime.
Retrospective application of the "enhanced sentence" is prohibited by the Louisiana and United States Constitutional provisions prohibiting ex post facto laws. U.S. Const. Art. 1, § 9, La. Const. art. 1, § 23. The prohibition extends to the enforcement of any enactment which changes the punishment to inflict greater penalty than that authorized for the crime at the time of its commission. Thus, legislation which passed after the crime could not be applied to persons convicted of the offenses that were committed prior to the enactment. State v. Curtis, 363 So.2d 1375, (La. 1978); State v. Bullock, 263 La. 946, 269 So.2d 824 (1972). See also Lindsey v. State of Washington, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937); In Re Medley, 134 U.S. 160, 10 S.Ct. 384, 33 L.Ed. 835 (1890); State ex rel. Woodward v. Board of Parole, 155 La. 699, 99 So. 534 (1924). Accordingly, the sentence is illegal insofar as it is "without suspension or parole at hard labor." See State v. Wilson, 362 So.2d 536 (La. 1978); State v. Lindsey, 351 So.2d 1178 (La.1977).
*1064 The case will therefore be remanded to the trial court for resentencing.

Decree
For the foregoing reasons defendant Robinson's conviction is affirmed. The sentence imposed is vacated and the case is remanded to the trial court for resentencing in accordance with law.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
DENNIS, J., concurs in part and dissents in part and assigns reasons.
DENNIS, Justice, concurring in part and dissenting in part.
I concur in the remand of this case for resentencing. However, I dissent from the majority's treatment of the use of the preliminary examination transcript at trial and from the approval of the trial judge's reasons for imposing the substantial penalty upon the defendant.
There are few subjects, perhaps, upon which the United States Supreme Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Despite the literal language of the Sixth Amendment, however, the court's cases have recognized the necessity for a limited exception to the confrontation requirement for the prior testimony of a witness who is unavailable at the defendant's trial. In keeping with the importance of this provision in our constitutional scheme, however, the high court has imposed a heavy burden on the prosecution either to secure the presence of a witness or to demonstrate the impossibility of that endeavor. Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the high court held that the absence of a witness from the jurisdiction does not excuse the state's failure to attempt to compel the witness' attendance at trial. In such circumstances, the government must show that it has engaged in a diligent effort to locate and procure the witness' return. "In short, a witness is not `unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good faith effort to obtain his presence at trial." Id., 390 U.S. at 724-725, 88 S.Ct. at 1322.
In this present case, I am simply unable to conclude that the prosecution met its burden of establishing Ronnie Jones' unavailability. From all that appears in the recordand there has been no suggestion that the record is incomplete in this respectthe prosecution's total effort to secure Ronnie's attendance at respondent's trial consisted of having a subpoena issued, but never served upon him, going to the witness' grandmother's house to look for him, and making a local phone call and two interstate calls to locate him. At least six weeks before the trial began, the prosecution was aware that Ronnie had moved away or had left the state; yet during that entire interval it made no contact with him. It is difficult to believe that the state would have been so derelict in attempting to secure the witness' presence at trial had it not had his favorable preliminary hearing testimony upon which to rely in the event of his "unavailability". The perfunctory steps which the state took in this case can hardly qualify as a "good faith effort". In point of fact, it was almost no effort at all.
The prosecution has attempted to justify its failure to use the procedures under Louisiana Code of Criminal Procedure articles 741-745 for obtaining witnesses from outside the state on the grounds that its efforts would have proven unsuccessful. Surely the prosecution's mere speculation about the difficulty of locating Ronnie or the chances of a successful subpoena in another state cannot relieve it of the obligation to make a good faith attempt. Although the rigor of their undertaking might serve to palliate a failure to prevail, it *1065 cannot justify a failure even to try. Just as Barber cautioned that "`the possibility of a refusal is not the equivalent of asking and receiving a rebuff,'" 390 U.S. at 724, 88 S.Ct. at 1322, so too, the possibility of a defeat is not the equivalent of persuing all obvious leads and returning empty-handed. The duty of "good faith effort" would be meaningless indeed "if that effort were required only in circumstances where success was guaranteed," Ohio v. Roberts, 448 U.S. 56, 80, 100 S.Ct. 2531, 2546, 65 L.Ed.2d 597 (Brennan, J., dissenting).
In addition, the trial judge refused to impose less than a maximum sentence because she thought defendant had wrongfully implicated the missing witness and might be involved in a similar crime in the future. However, the defendant, almost immediately, cleared all other persons by admitting that his initial version involving a third party was incorrect. Contrary to the trial judge's reasoning, the facts do not suggest a likelihood of similar transgressions by the defendant in the future. The victim's death in this case arose out of her extramarital relationship with the defendant. Insofar as the record discloses, the defendant, before this liason and its tragic end, had been an upright, law-abiding citizen and family man. Although it may never be possible for him to recover his former stature in the community, it is reasonable to presume that the defendant still possesses some of the qualities of self-discipline and industry which enabled him to become a prominent farmer and elected public official. In the absence of any specific contrary indication in the record, it is not reasonable to assume that the defendant, who is now 60 years old, will be likely to repeat the mistakes which brought forth these proceedings.
Accordingly, I respectfully concur in part and dissent in part.
NOTES
[1] Clyde Robinson was originally indicted by the Grand Jury of the Sixth Judicial District in East Carroll Parish on June 2, 1978 for the first degree murder of Eartha Jean Lee. On December 5, 1978, Judge Alwine Ragland quashed the indictment. Robinson was re-indicted on February 6, 1979, by the grand jury for negligent injury, false imprisonment, and criminal mischief. On March 28, 1979, the misdemeanor charges of negligent injury and false imprisonment were set aside. Robinson was indicted for the third time by the grand jury, for negligent homicide.
[2] La.C.Cr.P. art. 435 states in pertinent part:

The grand jury shall meet as directed by the court, or may meet at the direction of nine of its members, at any time and place within the parish.
[3] La.C.Cr.P. art. 532 states:

A motion to quash may be based on one or more of the following grounds:
(1) The indictment fails to charge an offense which is punishable under a valid statute.
(2) The indictment fails to conform to the requirements of Chapters 1 and 2 of Title XIII. In such case the court may permit the district attorney to amend the indictment to correct the defect.
(3) The indictment is duplicitous or contains a misjoinder of defendants or offenses. In such case the court may permit the district attorney to sever the indictment into separate counts or separate indictments.
(5) A bill of particulars has shown a ground for quashing the indictment under Article 485.
(6) Trial for the offense charged would constitute double jeopardy.
(7) The time limitation for the institution of prosecution or for the commencement of trial has expired.
(8) The court has no jurisdiction of the offense charged.
(9) The general venire or the petit jury venire was improperly drawn, selected, or constituted.
La.C.Cr.P. art. 533 states:
A motion to quash an indictment by a grand jury may also be based on one or more of the following grounds:
(1) The manner of selection of the general venire, the grand jury venire, or the grand jury was illegal.
(2) An individual grand juror was not qualified under Article 401.
(3) A person, other than a grand juror, was present while the grand jurors were deliberating or voting, or an unauthorized person was present when the grand jury was examining a witness.
(4) Less than nine grand jurors were present when the indictment was found.
(5) The indictment was not indorsed "a true bill," or the endorsement was not signed by the foreman of the grand jury.
[4] La.C.Cr.P. art. 671(5) states:

In a criminal case a judge of any court, trial or appellate, shall be recused when he:
* * * * * *
(5) Has performed a judicial act in the case in another court ....
[5] It is, of course, true that defendant's testimony before the grand jury cannot be used at his subsequent trial even for impeachment on cross examination except in a prosecution for perjury. See State v. Sheppard, 350 So.2d 615 (La.1977); State v. O'Blanc, 346 So.2d 686 (La. 1977); State v. Ivy, 307 So.2d 587 (La. 1975).
[6] McCormick, Law of Evidence § 257 (1972).
[7] III Wharton, Criminal Evidence § 650 (1973).
[8] The particular circumstances of each case must be considered. In State v. Jones, 261 La. 422, 259 So.2d 899 (1972), although subpoenas were not issued for the witnesses until the day before the trial, the belated and limited search was held to be reasonably diligent since the two witnesses were Norwegian seamen whose ship was not in port. See also State v. Green, 296 So.2d 290 (La.1974).
[9] Circumstances involving the brandishing, "playing with" or seizing of a loaded gun are often the bases for negligent homicide convictions. See, e.g., the actual circumstances of State v. Herrod, 412 So.2d 564 (La.1982) and State v. Bradley, 414 So.2d 724 (La.1982), in which insufficiency of the evidence was not an issue. In State v. Brown, 339 So.2d 6, 7 (La. 1976), this Court found that the test for criminal negligence was met in part by "defendant's rash, wanton and reckless brandishing of the loaded pistol...."
[10] The trial judge reasoned:

The maximum sentence can be imprisonment at hard labor up to five years. The legislature of 1981 felt like there had been too many gun killings. And they set up a policy for this state that where the maximum sentence is five years or less, it is mandated for all crimes after the effective date of the act, that the maximum sentence be imposed. The court is aware of the fact that this crime was committed before the effective date of the act. But this is a policy of the legislature. And the court feels like it is not a bad policy for the court to follow. There have been too many gun crimes in this parish and through out the country. But especially in this area. And the court believes that it isnot (sic) a bad thing to impose the five years without suspension or parole at hard labor with the Department of Corrections.
* * * * * *
Let it be noted that the court is well aware of the fact that that law is not binding on this court. That is the policy setforth (sic) by the legislature.