759 So.2d 104 (1999)
STATE of Louisiana, Appellee,
v.
James FULLER, Appellant.
No. 32,734-KA.
Court of Appeal of Louisiana, Second Circuit.
December 17, 1999.
*105 Peter J. Black, Shreveport, for appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Catherine M. Estopinal, D. Bruce Dorris, Assistant District Attorneys, for appellee.
Before BROWN, STEWART and CARAWAY, JJ.
STEWART, J.
The defendant, James Fuller, was convicted of second degree murder, a violation of La.R.S. 14:30.1, and sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. On appeal of his conviction, the defendant sets forth six assignments of error for our review. We affirm.

FACTS
On December 1, 1995, the defendant and Kendrick Williams ("Williams"), a co-defendant in this matter, were walking together and smoking marijuana in the Allendale area of Shreveport, Louisiana, when they came upon Willie Drew Graham ("Graham"). The defendant and Williams attempted to rob Graham of his money. Either the defendant or Williams fired multiple shots from a small gun, later identified by the defendant as a .22 caliber pistol. Graham sustained two gunshot wounds, one in his left buttock and one in his back, as he ran from his assailants. Graham managed to reach Caddo Street where he jumped through the open window of a vehicle stopped in traffic. The driver of the vehicle, Lauvata London, drove Graham to the hospital after he pleaded with her to help him. The gunshot wound to his back proved fatal, and Graham died on December 2, 1995.
The defendant was identified as a suspect and a warrant for his arrest was issued. The defendant learned that the police were looking for him and turned himself in while accompanied by his mother. When the defendant was informed by Detective H.D. Malone ("Detective Malone") that he was wanted for the murder of Graham, the defendant immediately stated that he was not the "trigger man." The defendant was charged with second degree murder and found guilty as charged after a jury trial. Following the trial court's denial of his motion for a new trial, the defendant appealed. The six assignments *106 of error presented for our review will be addressed in practical, rather than numerical order.

DISCUSSION

Sufficiency of the Evidence
In this assignment of error, the defendant contends that the evidence was not sufficient to support his conviction for second degree murder. The defendant argues that the prior recorded testimony of Antonio Capers, an eyewitness, was erroneously admitted and that in the absence of Capers' testimony, the remaining evidence was purely circumstantial and insufficient for a rational jury to conclude that he was Graham's assailant.
When issues are raised on appeal concerning both the sufficiency of the evidence and one or more trial errors, we review the sufficiency of the evidence claim first to determine whether the accused is entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). Under Hudson, supra, the accused may be entitled to an acquittal if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731, 734 (La.1992). When the entirety of the evidence, including erroneously admitted evidence, is insufficient to support the conviction, the accused must be acquitted and the remaining issues concerning trial error become moot. Id. Thus, in reviewing a sufficiency of the evidence claim, we review all evidence presented at trial, including evidence which the defendant claims was erroneously admitted.
The Jackson standard does not provide us with a vehicle to substitute our own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165. Our role is not to assess credibility or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support the requisite factual finding. State v. Gradick, 29,231 (La.App.2d Cir. 1/22/97), 687 So.2d 1071; State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992).
Second degree murder is the killing of a human being when the offender either has a specific intent to kill or inflict great bodily harm, or is engaged in the perpetration or attempted perpetration of specifically enumerated crimes, including armed robbery, first degree robbery, or simple robbery, even when the offender has no intent to kill or to inflict great bodily harm. La.R .S. 14:30.1(A)(1) and (2)(a). Even though a person does not directly commit the act constituting the offense, the person may still be convicted of the offense if found to be a principal. A principal is defined as "(A)ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly counsel or procure another to commit the crime...." La.R.S. 14:24.
Thus, in order to convict the defendant of second degree murder, the jury must have found either that he specifically intended to kill Graham or that he was engaged in the perpetration of a robbery along with Williams when Graham was killed. Robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while either armed with a dangerous weapon, believed to be armed, or unarmed. La.R.S. 14:64, 14:64.1, 14:65.
Through his own testimony, the defendant placed himself with Williams both before and during their encounter with *107 Graham. The defendant testified that Williams pointed a .22 caliber gun at Graham and demanded his money. The defendant denied involvement in the crime; however, his testimony established that he remained in close proximity as Graham ran for his life through the Allendale neighborhood and onto Caddo Street, where Graham was able to escape his assailants by jumping into a vehicle through an open window. According to his testimony, the defendant then realized that he was standing out by the street in broad daylight and that people in the area would be able to identify him, so he took off running back in the direction from which he, Williams, and Graham had come. The defendant never attempted to help Graham and never reported the incident to the police. When he turned himself in to the police and learned that he was wanted as a suspect in Graham's murder, the defendant's first response was to announce that he was not the "trigger man."
Contrary to the defendant's denial of any direct involvement in the crime, the testimony of Antonio Capers places the defendant as a direct participant in the crime and as the initial trigger man. Capers, who was outside with his grandfather, Willie Glover, working in a yard at the time of the incident, testified that he spoke with the defendant for a brief period. Capers then observed the defendant meet another guy, whom Capers could not identify. Capers testified that the defendant and his companion approached Graham. Capers saw the defendant firing a gun and heard seven shots initially and then three or four more. Capers' grandfather, Willie Glover, testified that he saw two young males run behind Graham and tussle with him. Glover also heard multiple shots fired from a gun.
Lauvata London was driving the car that Graham jumped into on Caddo Street. She testified that she saw Graham in the middle of the street before he jumped through the open passenger window of her car. She then saw a young man standing next to her car and holding a gun. The young man immediately ran off when he noticed that London saw him. London did not see the defendant, but when she asked Graham what happened, he told her that they shot him and that they were trying to rob him of his check, therby clearly indicating more than one assailant.
Latasha Thomas was stopped in traffic when she saw two young men on the side of the street and a man running across the street away from the two young men. The shorter young man, Williams, had a gun and was less than a foot behind Graham. The taller young man, identified by Thomas as the defendant, was standing nearby, watching, and apparently waiting. Thomas testified that she saw Graham jump into the car in front of her. The defendant and Williams then ran off together away from the street. Thomas pulled her car up to a red light and next to London's car and asked what happened. According to Thomas, Graham stated, "They shot me and they robbed me."
The testimony presented provides ample evidence from which the jury could find the defendant guilty of second degree murder. Capers' testimony placing the gun in the defendant's hands at the time of the initial confrontation with Graham indicates a specific intent to kill or inflict great bodily harm on the part of the defendant. Testimony also indicates that the defendant and Williams acted in concert to perpetrate a robbery. When viewed in the light most favorable to the prosecution, there is sufficient evidence, both direct and circumstantial, for a reasonable trier of fact to conclude that the defendant acted as a principal to the robbery and murder of Graham, or that he possessed the specific intent to inflict great bodily harm upon Graham. We find no merit to this assignment of error.

Prior Recorded Testimony
In this assignment of error, the defendant contends that the trial court erred in allowing the state to present the prior recorded testimony of Antonio Capers. *108 The defendant argues that Capers' testimony was the only direct evidence of his participation in the crime and that the prosecution did not establish that it made a diligent, good faith effort to locate Capers prior to trial as required to introduce his recorded testimony taken at a motion to suppress hearing.
La.C.E. art. 804 defines an unavailable witness, in relevant part, as follows:
A. Definition of unavailability. Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:
. . .
(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means.
Additionally, La.C.E. art. 804(B)(1) permits the introduction of former testimony of an unavailable witness taken at another hearing if the party against whom the testimony is offered had the opportunity to develop the testimony by direct, cross, or redirect examination.
Before testimony given at a prior proceeding may be introduced at trial, certain conditions must be met to avoid offending the confrontation and cross-examination clauses of the federal and state constitutions. State v. Robinson, 423 So.2d 1053 (La.1982); State v. Sylvester, 343 So.2d 1020 (La.1977); State v. Johnson, 27,522 (La.App. 2d Cir. 12/06/95), 665 So.2d 1237. The supreme court has stated the conditions as follows:
(1) defendant must have been represented by counsel at the earlier hearing; (2) the witness testified under oath; (3) the witness was cross-examined or else there was a valid waiver of the right to cross-examination; (4) at the time of the trial, the witness (whether out of state or not) is unavailable to testify; and (5) the state had made a good faith diligent effort to obtain the presence of the witness, including by its out-of-state subpoena powers where appropriate. Robinson, supra; State v. Hills, 379 So.2d 740 (La.1980).
Johnson, supra.
The first three conditions are met in this case. Capers testified at a prior hearing on the defendant's motion to suppress. The defendant was represented by counsel and Capers was subject to extensive cross-examination. However, the defendant contends that the state did not satisfy the last two conditions in that it did not make a diligent effort to locate Capers.
At a brief hearing to determine whether the state made reasonable efforts to obtain Capers' presence, the state produced one witness, William Bradford, an investigator for the district attorney's office. Bradford testified that he was asked to serve a subpoena for trial on Capers. Bradford located Capers' family home and was informed by Capers' mother that Capers seldom visited. She agreed to ask Capers to call Bradford.
Thereafter, Bradford contacted Capers' family in excess of five times. He was usually told that Capers had not been seen; however, on one occasion Capers' mother told him that she relayed his message to Capers. Capers never contacted Bradford. Bradford also obtained information that Capers' lived in Bossier City. He obtained an address and had the Bossier Parish Sheriff's Office check it, but they were also unable to locate Capers. Bradford opined that based on his thirty years of experience in law enforcement, Capers was attempting to dodge service of the subpoena. Based on Bradford's testimony, the trial court determined that Capers was unavailable and that his prior recorded testimony could be introduced to the jury.
The lengths to which the state must go to try to produce a witness is a question of reasonableness. Robinson, supra; *109 Johnson, supra. Based on a standard of reasonableness, we find that the state made a good faith, diligent effort to obtain Capers' presence and that the trial court did not err in allowing the introduction of Capers' testimony to the jury. We note the defendant's argument that Bradford may not have been authorized to serve a subpoena pursuant to La.C.Cr.P. art. 734. However, the defendant did not raise any objection regarding this issue at trial. See La.C.Cr.P. art. 841. We find no merit in this assignment of error.

Testimony by Assistant District Attorney
In this assignment of error, the defendant contends that the state usurped the power of the trial court in this matter when an assistant district attorney ("ADA") testified, prior to reading the testimony of Capers and Glover into the record, as to why the testimony of the two witnesses would be read to the jury rather than presented by the witnesses themselves. At the time the ADA testified, the defendant failed to make any objections to the fact or content of his testimony. La. C.Cr.P. art. 841 provides, "An irregularity or error cannot be availed of after the verdict unless it was objected to at the time of the occurrence." Thus, this issue was not properly reserved for appeal.
We note, however, that the ADA simply informed the jury who he was and why he was reading the testimony of the witnesses in lieu of having the witnesses present before the jury. The ADA briefly described why such testimony was allowed and informed the jury that Glover died prior to trial and that Capers could not be located. It is not the state's duty to charge the jury as to the applicable law. La.C.Cr.P. art. 802 confers the specific duty of charging the jury as to the applicable law on the trial court. However, following the ADA's testimony, the trial court properly instructed the jury, thus curing any error or usurpation of judicial powers that may have occurred. We find no merit in this assignment of error.

Motion to Suppress
In this assignment of error, the defendant claims that the trial court erred in failing to suppress his pre-Miranda statement made to the police in which he asserted, "I wasn't the trigger man." The defendant moved to suppress this statement as well as all statements made subsequent to his arrest. After a hearing on the motion to suppress, the trial court determined that the defendant's statement was freely and voluntarily made and denied the motion to suppress.
Before a confession can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451; La.C.Cr.P. art. 703(D). The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Walker, 28,577 (La.App.2d Cir. 10/4/96), 681 So.2d 1023. Spontaneous and voluntary statements made while the defendant is in custody and not given as a result of police interrogation or compelling influence are admissible as evidence even when made without the Miranda warning. State v. Robinson, 384 So.2d 332 (La.1980); State v. Reed, 499 So.2d 132 (La.App. 2d Cir.1986).
Interrogation is "... questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom or action in any significant way." Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Interrogation includes words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). There is a difference *110 between police-initiated custodial interrogation and communications, exchanges, or conversations initiated by the accused himself. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), reh. den., 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981).
A trial court's determination on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned unless clearly contrary to the evidence. State v. Hicks, 607 So.2d 937 (La.App. 2d Cir.1992).
The record shows that the defendant went to the police station on his own because he heard that the police were looking for him. The defendant met with Detective Malone who first informed him that there was a warrant for his arrest for the murder of Graham. Malone testified, both at the hearing on the motion to suppress and at trial, that the defendant immediately stated, "I'm not the trigger man." The defendant then gave a voluntary recorded statement after being read his Miranda rights. In his recorded statement, the defendant claimed no involvement in the crime against Graham, thus affirming his prior statement that he was not the trigger man. The defendant confirmed Malone's testimony by testifying at trial that he stated he was not the trigger man when he learned about the warrant for his arrest for the murder of Graham. The defendant also confirmed that after he made the statement, he was read his Miranda rights and then gave the police a recorded statement.
The defendant contends that his remark that he was not the trigger man was made in response to the beginning of interrogation by the police. However, the record reveals that the defendant made the remark without prompting from or questioning by the police. The defendant volunteered the information upon learning the reason why the police had been looking for him. We find that the record supports the trial court's determination. The remark made by the defendant prior to being Mirandized was clearly spontaneous and properly admissible into evidence along with the defendant's post-Miranda statement. We find no merit in this assignment of error.

Rebuttal Evidence
In this assignment of error, the defendant contends that the trial court erred in allowing the state to present evidence of bad acts as rebuttal evidence. The state introduced rebuttal evidence by Deputy Donnie Laney of the Caddo Parish Sheriff's Office. Deputy Laney, who was assigned to work at the Caddo Correctional Center ("CCC"), testified about an incident involving the defendant on March 3, 1990. According to Deputy Laney, the defendant became angry and closed his fist when told that he would have to wait until the other inmates went through the chow line before he could heat a cup of soup. A struggle ensued as the defendant was escorted back to his cell. Deputy Laney testified that the defendant threatened him by saving, "I dare you to step in this cell, because I'm going to kick your ass." The defendant then banged on his cell for fifteen minutes until he was escorted to a safety cell.
The defense objected to the introduction of Deputy Laney's testimony but was overruled by the trial court. The trial court determined that the rebuttal testimony was admissible considering that the defense presented two character witnesses who testified about the defendant's reputation for peacefulness and kindness in the community. Also, the defendant testified during direct examination that he looks upon others as his brothers and sisters in Christ.
An accused who takes the stand is subject to impeachment as is any other witness. La.C.E. art. 607(A); State v. Vessell, 450 So.2d 938 (La.1984); State v. Taylor, 621 So.2d 141 (La.App. 2d Cir. 1993), writ denied, 93-2054 (La.2/11/94), 634 So.2d 371. When the accused takes the stand, he places his credibility at issue. *111 State v. Frentz, 354 So.2d 1007 (La.1978); Taylor, supra. La.C.E. art. 608(A) provides that a witness' credibility may be attacked by evidence of general reputation only. Use of evidence of particular acts, vices, or courses of conduct for attacking a witness' character for truthfulness is prohibited. La.C.E. art. 608(B).
If the accused offers evidence of a pertinent character trait, the prosecution has the right to rebut such evidence. La.C.E. art. 404(A)(1); Taylor, supra. While evidence of other crimes or bad acts is generally inadmissible, such evidence which tends to prove a material issue and has an independent relevance other than to show that the defendant is a bad person may be admitted pursuant to certain exceptions. State v. Pardon, 97-248 (La.App. 5th Cir.10/15/97), 703 So.2d 50, writ denied, 97-2892 (La.3/20/98), 715 So.2d 1207. Article 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Additionally, in all cases in which evidence of a trait of character is admissible, proof may be made by testimony as to general reputation only; inquiry into specific instances of conduct is allowable on cross-examination. La.C.E. art. 405(A).
The defendant chose to take the stand on his on behalf. Additionally, the defendant volunteered the gratuitous testimony that he considers others his brothers and sisters in Christ. By taking the stand and presenting character witnesses to testify as to his reputation for peacefulness, the defendant not only placed his credibility and character at issue, but also opened the door for attack on his credibility and character by the introduction of reputation evidence. However, the state's qualification of Deputy Laney as a rebuttal character witness left much to be desired, especially as Deputy Laney's testimony pertained to a specific instance of bad conduct rather than the defendant's general reputation in the community. Rebuttal testimony presented at trial by the state regarding the defendant's involvement in an after-thefact dispute that was unrelated to the crime at issue does not fit within the scope of admissibility under our Code of Evidence. Therefore, the trial court erred in allowing the introduction of Deputy Laney's testimony as rebuttal evidence.
Although the introduction of Deputy Laney's testimony was error, we find that it was harmless error under the facts of this case. The harmless error test set forth in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) was adopted by the Louisiana Supreme Court in State v. Gibson, 391 So.2d 421 (La.1980). The Chapman test asks whether there is a reasonable possibility that the erroneously admitted evidence might have contributed to the verdict and requires that the reviewing court be able to declare a belief that the error was harmless beyond a reasonable doubt. State v. Finch, 31,888 (La.App.2d Cir. 5/5/99), 733 So.2d 716; State v. Garris, 603 So.2d 277 (La.App. 2d Cir.1992), writ denied, 607 So.2d 564 (La. 1992).
Evidence presented by the state identifies the defendant as one of the two assailants who attacked Graham. Capers identified the defendant at the beginning of the attack on Graham and placed a gun in the defendant's hand at the start of the attack. Thomas' testimony placed the defendant on Caddo Street with Williams and an injured and bleeding Graham. Also, the *112 testimony of Thomas and London establishes that Graham stated that "they" shot and robbed him, clearly indicating more than one assailant. Considering the ample evidence of the defendant's guilt, we cannot say that Deputy Laney's brief testimony regarding the defendant's behavior at CCC during a minor incident contributed to the verdict. We find no merit in this assignment of error.

Errors Patent Review
In his sixth assignment of error, the defendant requests review of the record for errors patent. This request is unnecessary since an error patent review is conducted automatically in all criminal cases. State v. Bryant, 29,344 (La.App.2d Cir. 5/7/97), 694 So.2d 556; State v. Stamper, 615 So.2d 1359 (La.App. 2d Cir.1993), modified on other grounds, 624 So.2d 1208 (La.1993). We have reviewed the record for error patent pursuant to La.C.Cr.P. art. 920(2) and found none.

CONCLUSION
For the reasons set forth above, we affirm the defendant's conviction for second degree murder and sentence of life imprisonment.
AFFIRMED.