CALLOWAY, J., Ad Hoc.
11 Following a jury trial, the defendant, Marion Dale Jones, was convicted of aggravated rape. He was sentenced to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. For the reasons set forth in this opinion, we affirm.
FACTS AND PROCEDURAL HISTORY
On July 1, 2007, at approximately 1:30 a.m., lí-year-old R.W.[1] was asleep on the couch in her mother’s house when she awoke to find a man on top of her. The man pulled her shirt up and licked her breasts, thén pulled her Shorts and underwear down and licked her vagina. R.W. pushed the man off of her and ran into the bedroom of her older sister, Y.W. The man peeked into Y.W.’s room and then left the house. At the time of the incident, the girls were alone in the house with their two younger cousins, as their mother had gone to a friend’s house. The girls called the police and their grandmother, who lived several housés down the street from them.
When the police arrived, R.W. and Y.W. identified Terrence Lattin, their neighbor who lived across the street from them, as the suspect. He was arrested, but DNA evidence later excluded him as the suspect. The DNA candidate sample was then placed in the Combined DNA Index System (“CODIS”), and it returned as a match for the defendant. ' On July 28, 2008, the defendant was charged by bill of indictment with aggravated rape.
The-following evidence was adduced at trial, which began on October 21, 2014.
Kelly Cubley, who was a detective in the Juvenile Division of the |2Bossier City Police Department in 2007, and who is currently a nurse', testified that she was contacted the day after the incident. Cubley *272 arranged for R.W. to be interviewed at the. Gingerbread House. Cubley further testified that she later contacted Lattin, who was the only suspect at the time, while he was in jail. Lattin did not confess, vehemently denied his involvement in this crime, and denied knowing R.W. Lattin also told Cubley that a man driving a white SUV knocked on his door the night of the incident. Cubley testified that approximately three months later, the DNA test excluded Lattin, and he was released from jail.
Cubley testified that she subsequently developed another suspect, the defendant. On July 9, 2008, she interviewed the defendant, and he volunteered to submit to DNA testing.' During the interview, the defendant also admitted that he lived a few blocks down the street from R.W., and that he drove a white SUV. When Cubley asked the defendant about the DNA match, he said that he did not remember, and that he did not know why his DNA was found.
Detective James Stewart, a sergeant in the Violent Crimes Division of the Bossier City Police Department, and currently the Deputy Chief of Police, testified that he assisted Cubley with the defendant’s interview that took place on July 9, 2008. Stewart further testified that during tlie interview, the defendant'stated, “I’m not denying it; I’m not saying I didn’t do it; I’m just not going to talk about that.” The defendant opted not to give a taped statement. Stewart also testified that on the night of the incident, he transported R.W. to the hospital for a sexual assault examination.
| ^Detective Tina Smith, who was a patrol officer at the Bossier City Police Department at the time of the incident, testified that on July 1, 2007, she was dispatched to 1116 McElroy Drive, located in the Barks-dale Annex area of Bossier City, regarding a man entering the house and touching a juvenile. When she arrived at the scene, she encountered four black females, including R.W., Y.W., and their grandmother, Helen. Smith was told that the suspect was a dark-skinned black male, 6'6" to 5'8", thinly built, and that he was wearing a red hat and a white T-shirt.
Smith testified that she also observed the suspect at the time, Lattin, who was standing outside his home, several houses down from R.W.’s house. Lattin was not wearing a shirt or a hat. Smith went to Lattin’s house, and he informed her that he had been in his house the entire evening. Lattin also said that a black male wearing a red hat and a white T-shirt had come to his house and knocked on his door earlier that evening.
Smith obtained consent from Lattin’s girlfriend, April Clark, to search the house for clothing that matched the suspect’s description. She stated that a white T-shirt was found in a bedroom between the wall and the bed, and that a red hat was found in another bedroom on top of the trash bag. Clark told Smith that Lattin was wearing a red T-shirt and a grey hat that day. Smith then transported Lattin to the victim’s house in her patrol unit. R.W. and Y.W. identified Lattin as the suspect.
Brad Kalmbach, a crime scene investigator for the Bossier City Police Department, testified that he responded to the scene and collected evidence. He identified pictures that he took of R.W.’s house, including pictures of the | ¿couch in the living room where the assault occurred, the hallway, the bedrooms, and the window in the bedroom that was found open, which was believed to be the point of entry. He also processed the victim’s house for fingerprints, but did not find any usable prints. Kalmbach also testified that he contacted Lattin in jail and obtained a DNA sample from him. ■
*273 Lattin testified that he did not sexually assault R.W., that he maintained his innocence to the police, and that he submitted to DNA testing. He also testified that on July 1, 2007, he was at home with Clark, when a man wearing a red hat and white T-shirt, driving a white SUV, knocked on his door and asked for a woman whose name started with a “D.” Lattin told the man that the woman did not live there and the man left. A few minutes later, he saw police lights and opened the door. He was then arrested and charged with aggravated rape.
Lattin also testified that he had been to the KW.’s house earlier that day, and that he smoked a marijuana blunt with her mother. However, he stated that was the first time he had ever been in KW.’s house, and that he was not even aware that young girls lived there. He further stated that after they smoked, he went home for the evening.
Tabitha Ward, a sexual assault nurse examiner, testified regarding the July 1, 2007, sexual assault examination she conducted on R.W. The examination included the collection of DNA swabs from the victim for the perk kit, as well as the application of a dye marker to R.W.’s vaginal area. Ward testified that she observed dye uptake in the region between the vaginal and anal areas, which is an indication of an abrasion in that area.
|fiR.W., who was 18 years old at the time of trial, testified that on the night of the incident, she was asleep on the couch- after going-to a wedding with her family. She stated that she woke up to a man pulling up her' shirt and licking her breasts. She stated that the man then pulled down her shorts and underwear, and licked her vagina. R.W. asked the man who he was and he said, “You know me, your mama know me too.” When she was able to get away from the man, she went to the restroom, and then to Y.W.’s room. The man peeked in Y.W.’s room and asked her why she wouldn’t come back, but R.W. didn’t answer. R.W. further testified that although she identified, that man as Lattin the night of the incident,' she didn’t get a clear look at the man because it was dark in the house. R.W. stated that Lattin was at her house earlier that day with her mother.
Y.W. testified that on the night of the incident, .she was asleep in her bed when R.W. came in her room. She asked R.W. what was wrong and R.W. said, “You know the man down the street.” Y.W. then saw a man wearing a red hat and a white T-shirt peeking into her room. She called her grandmother, who immediately came over. They then called the police. Y.W. testified that she also identified the man as Lattin that night, and that he had been at her house earlier that day with her mother.
The. transcript of DNA analyst Lauren Arihood’s testimony was read at trial by Michelle Vrana, the DNA supervisor for the North Louisiana Crime Lab. Arihood, an expert in forensic DNA analysis and testing, and who was currently employed as a CODIS Auditor Biologist for the FBI at the time of trial, testified that she previously worked at the North Louisiana 16Crime Lab and performed the DNA testing in this case. The crime lab report was admitted into evidence and published to the jury. Arihood stated that she tested the bite-mark/breast swab and the external genitalia swab obtained from R.W.
On October 23, 2014, the jury found the defendant guilty as charged of aggravated rape. On December 30, 2014, the trial court sentenced the defendant to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.
The defendant appeals.
*274 LAW AND DISCUSSION

Insufficiency of the Evidence

On appeal, the defendant, argues three counseled and two pro se assignments of error. In both his first counseled and pro se assignment of errors, he argues that the evidence adduced at, trial was insufficient to support an aggravated rape conviction. The defendant contends that the state failed to prove beyond a reasonable doubt thát on July 1, 2007, he entered R.W'.’s house and sexually assaulted her.
When issues are raised on appeal,, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light [7most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder; State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
This court’s authority to' review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia and does not extend to credibility, determinations made by the trier of fact. State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020; State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). It is within the jury’s wide purview to make credibility determinations and to decide the ■ weight of expert testimony. State v. Williams, 2007-1407 (La.10/20/09), 22 So.3d 867; State v. Green, 508 So.2d 602 (La.App. 2d Cir.1987).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence | Smust be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Parker, 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497; State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
The appellate court does not assess the credibility of witnesses or reweigh *275 evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
In cases involving a defendant’s claim' that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Hughes, 2005-0992 (La.11/29/06), 943 So.2d 1047; Powell, supra.
La. R.S. 14:41 provides:
A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person committed without the person’s lawful consent.
B.' Emission is not necessary, and any sexual penetration, when the rape involves vaginal ór anal intercourse, however slight, is | sufficient to complete the crime.
C. For purposes of this Subpart, “oral sexual intercourse” means the intentional engaging in any of the following acts with another person:
(1) The touching of the anus or genitals of the victim by the offender using the mouth or the tongue of the offender.
(2) The touching of the anus or genitals of the offender by' the victim using the mouth or tongue of the victim.
La. R.S. 14:42 provides, in pertinent part:
A. Aggravated rape is a rape eommit-ted upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful, consent of the victim because it is committed under any one or more of the following circumstances:
[[Image here]]
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim’s age shall not be the defense.
In the instant case, R.W. testified at trial that on the night of July 1, 2007, she was asleep on the couch at her home when she awoke to find a man on top of her. This man pulled up R.W.’s shirt and licked her breasts, and then he pulled down her shorts and licked her vagina. Ward, who examined R.W. on the night of the incident, testified that she observed abrasions in the area between: R.W.’s vaginal and anal areás.
Even though R.W. and Y.W. both identified Lattin as the suspect on the night óf the incident, and clothing that matched their description of the suspect was found in Lattin’s house,'‘we find that the DNA evidence was sufficient' to establish that the defendant raped R.W. The DNA pro-filé obtained from the bite mark/ breast swap in RW.’s rape kit matched the DNA sample obtained from the defendant. This DNA evidence excluded |inLattin as the suspect, thereby resolving the initial mis-identification of the perpetrator. Therefore, this assignment is without merit.

Motion to Quash the Grand Jury Indictment

In the defendant’s second counseled assignment" of error, he argues that the trial court erred in denying his motion to quash the grand jury’s indictment. He argues that although there are transcripts suggesting that a grand jury convened and Returned three true bills on July 21, 2008, the transcripts are silent as to the individuals against whom the true bills were returned and the charges on which the true bills were returned. The defendant further argues -that there is no minute entry indicating that the-grand jury was impaneled and returned a true bill of indictment against him for the charge of aggravated rape. He argues that the trial court’s supplementation of the minutes “embel *276 lished” the transcript, and that the supplement could not cure the absence of a minute entry.
The motion to quash is essentially a mechanism by which to raise pretrial pleas of defense, i.e., those matters which do not go to the merits of the charge. State v. Jones, 45,476 (La.App.2d Cir.9/22/10), 47 So.3d 1096.
La. C. Cr. P. arts. 532 and 533, which set forth the grounds for a motion to quash, do not include the failure to return the indictment in open court. However, such lists are merely illustrative, and motions not based on the grounds therein should not be automatically denied. In making .the determination of whether a given issue is appropriate to raise in a motion to quash, a court should determine whether it is a defense which, if successful, | ¶ requires dismissal of the indictment regardless of the merits of the charge and which by its nature must be available before trial. State v. Franklin, 2013-0488 (La.App. 4th Cir.10/9/13), 126 So.3d 663. See also State v. Jones, 2014-0014 (La.App. 4th Cir.6/11/14), 144 So.3d 120, writ denied, 2014-1496 (La.2/27/15), 159 So.3d 1065.
La. C. Cr. P. art. 383 provides:
An indictment is a written -accusation of crime made by a grand jury. It must be concurred in by not less than nine of the grand jurors, indorsed “a true bill,” and the indorsement must be signed by the foreman. Indictments shall be returned into the district court in open court; but when an indictment has been returned for an offense which is within the trial jurisdiction of another court in the parish, the indictment may be transferred to that court.
On November 7, 2012, counsel for the defendant filed a- motion to quash the grand jury indictment on the basis that there was no minute entry establishing that the indictment was returned by the grand jury in open court pursuant to La. C. Cr. P. art. 383. A hearing on the motion took place on May 17, 2013, where the state introduced the following documents into evidence: the report of the grand jury, the transcript of the date the indictment was returned in open court, and the bill of indictment. The defense counsel argued that the transcript did not show that the defendant was indicted on July 21, 2008, because it stated only that three individuals were indicted. ' No names were provided. The trial court stated that the documents established that the grand jury investigated three cases and returned three true bills in open court, and that the transcript and the report bear the same date as the. defendant’s indictment.
| i2The trial court subsequently denied the motion to quash, and ordered the clerk to- supplement the minutes from July 21, 2008, to state that on that date, the duly and properly impaneled grand jury returned a true bill of indictment against the defendant for aggravated rape, in open court. The following minute entry was supplemented into the record:
7/21/2008 The Grand Jury duly and legally impaneled, returned a True Bill of Indictment as to Marion Dale Jones. Minute entry per Judge Robinson’s order on June 11, 2013. Schuyler Marvin on behalf of the State. (Stinson)
The record reveals that the bill of indictment was in proper form, as it is endorsed “a true bill” and signed by the foreman of the grand jury on July 21, 2008, which is the same date it was filed stamped by the deputy clerk. Although the transcript did not provide the names of individuals indicted on that date, the transcript, the report, and the defendant’s indictment all bear the same date.
*277 Therefore, we find that the defendant failed to meet his burden of proving that the bill of indictment was not returned by the grand jury in open court. The trial court did not err in ordering the supplement of the court minutes to show that the indictment was returned in open court. Further, such ruling did not prejudice the defendant. This assignment of error is without merit.

Motion for Mistrial

In the defendant’s third and final counseled assignment of error, he argues that the trial court erred in denying his motion for mistrial. More specifically, the defendant contends that in publishing to the jury the crime |islab report created by Arihood, which contained a reference to CODIS as the source of his DNA sample, the state violated the trial court’s pretrial order, which prohibited any reference to CODIS, and prejudiced him by suggesting he had a criminal history. The defendant further contends that the trial court’s denial of his motion for mistrial, without questioning the jurors as to their knowledge of CODIS to ascertain the extent of prejudice to him, constitutes reversible error.
La. C.E. 404(B)(1) provides:
Except as otherwise provided in La. C.E. Art. 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any evidence it intends to introduce at trial for such' purposes, ■ or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Generally, evidence of other acts of misconduct is not admissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a “bad person.” State v. Richardson, 46,360 (La.App.2d Cir.6/22/11), 71 So.3d 492. This rule of exclusion stems from the “substantial risk of grave prejudice to the defendant” from the introduction of evidence regarding his unrelated criminal acts. State v. Prieur, 277 So.2d 126 (La.1973). Evidence of other crimes, wrongs or acts may be introduced when it relates' to conduct that forms an integral part of the act or transaction that is the subject of the present proceedings. La. C.E. art. 404(B)(1); State v. Colomb, 98-2813 (La.10/1/99), 747 So.2d 1074; State v. Coates, 27,287 (La.App.2d Cir.9/27/95), 661 So.2d 571, writ denied, 95-2613 (La.2/28/96), 668 So.2d 365.
The erroneous introduction of other crimes evidence is subject to harmless error review. State v. Gatti, 39,833 (La.App.2d Cir.10/13/05), 914 So.2d 74, writ denied, 2005-2394 (La.4/17/06), 926 So.2d 511. Trial error is harmless where the verdict, rendered is “surely unattributable to the error.” State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94.
The law regarding mistrials on the grounds of improper references to other crimes is well settled. La. C. Cr. P. art. 770(2) provides that a mistrial shall be granted upon motion of the defendant when a remark or comment is made within the hearing of the jury by the judge, district attorney, or a court official during trial or in argument and that remark refers to another crime committed or alleged to have been committed by the defendant *278 as to which evidence is not admissible. State v. Ellis, 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139; State v. Roberson, 46,697 (La.App.2d Cir.12/14/11), 81 So.3d 911, writ denied, 2012-0086 (La.4/20/12), 85 So.3d 1270.
La. C. Cr. P. art. 771 sets forth permissive grounds for requesting an admonition or a mistrial when a prejudicial remark is made on grounds that do not require automatic mistrial under article 770. La. C. Cr. P. art. 775 also sets forth additional permissive grounds for mistrial. Under these articles, mistrial is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Ellis, supra; State v. Roberson, supra, The determination of whether actual prejudice has occurred lies within the discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. State v. Authier, 46,903 (La.App.2d Cir.4/25/12), 92 So.3d 494, writ denied, 2012-1138 (La.11/2/12), 99 So.3d 662.
A comment' must not “arguably” point to a prior crime; to trigger a mandatory mistrial pursuant to Article 770(2), the remark must “unmistakably” point to evidence of another crime. State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893, 906, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). Further, references to a “mug shot,” “criminal history file” or “rap sheet” have been held not to mandate mistrial. State v. Hall, 43,125 (La.App.2d Cir.6/4/08), 986 So.2d 863, writ denied, 2008-1511 (La.3/13/09), 5 So.3d 116; State v. Babin, 336 So.2d 780 (La.1976); State v. Gay, 29,434 (La.App.2d Cir.6/18/97), 697 So.2d 642; State v. Bonnee, 2002-0637 (La.App. 4th Cir.8/28/02), 826 So.2d 1187; State v. Clark, 2005-652 (La.App. 5th Cir.2/14/06), 924 So.2d 282, writ denied, 2006-0622 (La.10/13/06), 939 So.2d 372.
Generally, ambiguous or obscure references to other crimes made without explanation or elaboration do not prejudice the defendant. State v. Kemp, 39,358 (La.App.2d Cir.3/11/05), 896 So.2d 349, writ denied, 2005-0937 (La.12/9/05), 916 So.2d 1052; State v. Gene, 587 So.2d 18 (La.App.2d Cir.1991), writ denied, 604 So.2d 993 (La.1992).
In this casé, the record void of any indication that Arihood, in her testimony, referred to CODIS as a source of the defendant’s DNA sample. 11fiFurther, Ari-hood never referred to any specific crime committed by the defendant.
Arihood only referred to CODIS when discussing the crime lab report, in the context that the evidence obtained' from the rape kit was entered into CODIS. She did not refer to CODIS in the context that the defendant’s DNA was in CODIS and returned as a match. It is clear that this reference to CODIS does not point to evidence of another crime committed by the defendant, and that it was ambiguous and presented without explanation or elaboration. Further, counsel for the defendant did not'request an admonition.
For these reasons, we find that the defendant failed to show that he was substantially prejudiced by the obscure reference to CODIS in the crime lab report, or that such reference made it impossible for him to receive a fair trial. Additionally, as discussed in the first assignment of error, the evidence presented at trial sufficiently supported the defendant’s conviction. Therefore, any error regarding the reference to CODIS in the crime lab report is harmless. This assignment of error is meritless. . - >

*279
Right to Confrontation

In this pro se assignment, the defendant argues that his right to confrontation was violated because he did not have the opportunity to cross-examine Arihood, the DNA analyst who prepared the crime lab report. Specifically, he argues that the trial court erred in allowing Michelle Vra-na to testify as a DNA expert regarding the analysis of a certified report, over |17his counsel’s objection, as she did not personally perform the DNA testing, thereby violating his right to confront his accuser, Arihood.
La. C. Cr, P. art. 295(B) states:
The transcript of testimony of any other witness who testified at the preliminary examination is admissible for any purpose in any subsequent proceeding in the case, on behalf of either, party, if the court finds that the witness is dead, too ill to testify, cannot be 'found, or is otherwise available for testimony, and that the absence of the witness was not procured by the party offering the testimony.
Before testimony given at a prior proceeding may be introduced at trial, certain conditions must be met to avoid offending the confrontation and cross-examination clauses of the federal and state constitutions. State v. Robinson, 423 So.2d 1053 (La.1982); State v. Sylvester, 343 So.2d 1020 (La.1977); State v. Johnson, 27, 522 (La.App.2d Cir.12/06/95), 665 So.2d 1237; State v. Fuller, 32, 734 (La.App.2d Cir.12/17/99, 759 So.2d 104), writ denied, 2000-0159 (La.8/31/00), 766 So.2d 1273. The supreme court has stated the conditions as follows:
(1) defendant must have been represented by counsel at the earlier hearing; (2) the witness testified under oath; (3) the witness was cross-examined or else there was a valid waiver of the right to cross-examination; (4) at the time of
trial, the witness (whether out of state or not) is unavailable to testify; and (5) .the, state had made a good faith diligent effort to obtain the presence of the witness, including by .its out-of-state subpoena-powers where appropriate. State v. Robinson, supra.
On June 13, 2013, the state filed a notice of intent to present the testimony of DNA analyst, Lauren Arihood, via simultaneous broadcast pursuant to La..R.S. 15:502, noting that she resides outside of the state. Counsel for the: defendant filed an objection and requested Arihood’s physical appearance at trial. On July 17, 2013, defense counsel filed a | ^motion for a trial continuance, which was set for August 12, 2013. The state filed ..an objection to the motion, noting that it had issued a subpoena and Arihood was available to testify on the scheduled trial date. However, Ari-hood would be unavailable to testify after that date because she was moving to Korea. The state established’ that Arihood analyzed the DNA in this matter in 2007 while employed at North Louisiana Crime Lab, that she is no longer employed there, and that she currently resided in Washington, D.C. Alternatively; if the continuance was granted, the state requested a preliminary examination for the perpetuation of Arihood’s testimony.
After a hearing, which took place on August 6, 2013, the trial court granted the continuance and the state’s request for a preliminary examination. Arihood testified via Skype on August 12,2013.
After a careful review of the record, we find that DNA analyst Arihood did testify in this case. At trial, the transcript of Arihood’s testimony, which was previously taken at a preliminary examination, was read by Michelle Vrana pursuant to La. C. Cr. P. art. 295(B). At the prior hearing, the defendant was represented by counsel, *280 Arihood testified under oath, she was thoroughly cross-examined by defense counsel, and at the time of trial, she was unavailable to testify. The trial court did not err in allowing the reading of the transcript of Arihood’s testimony at trial. The defendant’s right to confront and cross-examine Arihood was not violated, and the crime lab report was properly introduced into evidence. Therefore, this assignment of error is without merit.
| ^CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, CARAWAY, LOLLEY, PITMAN and CALLOWAY (Ad Hoc), JJ.
Rehearing denied.

. The victim’s initials are used here to protect their identity pursuant to La. R.S. 1844(W).