Judgment rendered March 1, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,920-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

EMILY R. FIELDS                             Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 356,567

Honorable Donald E. Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Jane L. Beebe

JAMES E. STEWART, JR.                Counsel for Appellee
District Attorney

JASON W. WALTMAN
REBECCA A. EDWARDS
VICTORIA T. WASHINGTON
Assistant District Attorneys

* * * * *

Before PITMAN, COX, and STEPHENS, JJ.

**COX, J.**

This criminal appeal arises out of the First Judicial District Court, Caddo Parish, Louisiana. Emily Fields was found guilty by a unanimous jury of obstruction of justice, in violation of La. R.S. 14:130.1. She was sentenced to five years at hard labor. Fields now appeals her conviction. For the following reasons, we affirm.

### FACTS

According to Shreveport Police Department ("SPD") Officer Diane Sanchez's report, on October 4, 2015, at approximately 9:11 p.m., officers responded to an emergency involving a pedestrian and a vehicle at the corner of East 76th Street and Fairfield Avenue. The pedestrian, Nathaniel Nicholson, was having trouble breathing and was transported to University Health, where he was pronounced dead. The vehicle that struck Mr. Nicholson fled the scene before emergency responders arrived. Crash investigators gathered pieces of the vehicle that were left at the scene to determine the make and model. It was later determined that the passenger side mirror left at the scene was possibly from a 2003-2007 Honda Accord. A press release was sent to the media on October 7, 2015, requesting any information about the accident and/or vehicle.

After the media release, Officer Sanchez was contacted by Blake Stephenson, the owner of Louisiana Glass in Bossier City. Mr. Stephenson informed Officer Sanchez that one of his employees, Ronnie Odums, believed Louisiana Glass replaced the front windshield on a 2003 black Honda Accord that was described in the SPD media release. Mr. Stephenson stated that Louisiana Glass received a request from Joseph Lofton for a front windshield for a 2003 Honda Accord. He stated that Mr.

Lofton brought the vehicle in on October 6, 2015. Mr. Lofton was followed in a vehicle by Fields, who spoke to Mr. Odums. Mr. Odums stated that Fields told him the vehicle was hers and asked him how long it was going to take to repair the windshield. Mr. Odums stated that he observed damage to the vehicle's front bumper, fender, A-pillar, and windshield.

Officer Sanchez stated in her report that she reviewed the surveillance video and was able to positively identify Mr. Lofton and Fields. She also confirmed that the 2003 black Honda Accord was registered to Fields. Officer Sanchez met with Mr. Lofton on October 9, 2015, and he agreed to go to the police station for an interview regarding the accident. Mr. Lofton was *Mirandized* prior to questioning at the police station. According to Officer Sanchez's report, Mr. Lofton stated that he had been friends with Fields for four years and described himself as "Mr. Over-reliable." He stated that Fields texted him for help at 6:00 a.m. on October 5, 2015. He said she asked for help because her vehicle was vandalized, but he knew there must be more to the story after looking at the damage to the vehicle. Mr. Lofton stated that he did not ask Fields many questions regarding the vandalism and described the following as being damaged on Fields' vehicle: windshield shattered, passenger side dents, the bumper was loose, passenger headlights cracked, and passenger side mirror parts were hanging off. He told Officer Sanchez that he ordered new vehicle parts in his name because Fields said she "couldn't put the parts in her name." He stated that he did not know why she was putting the parts in his name and giving him cash to pay for it, but he felt that if he helped her out, there might be a way for them to have a relationship.

Mr. Lofton told Officer Sanchez that he drove Fields' vehicle to Sherwin-Williams to match the paint color and purchased a half-pint of touchup paint. The manager at Sherwin-Williams verified this purchase for officers. Mr. Lofton stated that he picked up the parts that were ordered from New World International and paid cash. The manager of New World International verified this purchase for officers. Mr. Lofton stated that Fields asked him to drive her vehicle to Louisiana Glass because she did not want to get pulled over for the busted windshield. He stated that he did not know who repaired the vehicle or where the repairs were made and had not seen Fields since October 6, 2015, after dropping off the vehicle at Louisiana Glass.

Fields' employer at the time of the accident recalled the following for Officer Sanchez: Fields came to work on October 6, 2015, and stated that her car had been vandalized over the weekend while she was at a house party; Fields seemed very nonchalant about what happened to her car but was more upset about the new headlights being clear instead of smoky; Fields stated a friend of a friend was replacing the headlights; Fields received a phone call while at work on October 8, 2015, which visibly upset her; and, Fields left work on October 8, 2015, around noon, and never returned.

Officer Sanchez stated in her report that she was contacted by Attorney Stephen Glassell on October 12, 2015. Glassell told Officer Sanchez that he was representing Fields, Fields would not be giving a statement, and the vehicle could be located at her residence. After impounding the vehicle, Officer Sanchez made the following observations: the vehicle smelled of fresh paint; the passenger side mirror was different

3

than the driver side mirror; the headlights were offset; there was a green substance under the passenger fender, which they thought to be used to fill in holes that were drilled to pull out the dent in the fender; and small pieces of glass (presumably from the windshield) were found on the front and rear passenger floorboards.

Officer Sanchez removed the driver side mirror of the vehicle and sent it to the lab to compare it to the side mirror left at the scene of the accident. The lab results included the following, "The paint samples tested in item 5 were similar in color, layer structure, solubility and infra-red absorbance spectra to the paint samples tested in item 6." Office Sanchez noted in her report that the lab could not say that both mirrors came from the same car.

SPD Corporal Dirk Morris stated in his report that he was called to the scene of the accident to investigate. He noted in the narrative of his report that a concerned citizen who was passing by called for help after checking on the victim, who was lying face down on the sidewalk. He stated that the victim had obvious head trauma with blood coming from his ear. Cpl. Morris stated that while preparing to photograph the scene, he received a call that the victim had passed away. According to the citizen who found the victim, the victim was lying with his legs in the street and his head was face down on the sidewalk. He stated that the victim's shoes were knocked off his feet; one shoe was next to the victim and the other a few feet away. Cpl. Morris noted that the victim appeared to be carrying groceries in a brown paper bag, which was located in the street next to him. He stated in his report that multiple pieces of side mirror were located next to the victim. Cpl. Morris' initial involvement with the case ended at this point, but he was

4

reassigned to the case on June 21, 2017, after Officer Sanchez was promoted and moved to another unit.

Cpl. Morris searched Fields' phone but was unable to find anything prior to October 19, 2015. He attempted to search Mr. Lofton's phone but was unable to complete the download of the data due to technical difficulties. Cpl. Morris was able to obtain Fields' phone records from Metro PCS. The phone records showed that the phone was in continuous use before and after the crash. According to location data, Fields' phone was at her residence until approximately 8:56 p.m., when the phone moves to the vicinity of the crash from 9:00 p.m. until 9:07 p.m. The phone then travels back to Fields' residence, approximately 8 miles from the scene of the accident.

Cpl. Morris obtained an arrest warrant for Fields on March 13, 2018, charging her with felony hit and run and obstruction of justice.

On May 15, 2018, the State filed its bill of information against Fields for violating La. R.S. 14:130.1 (obstruction of justice) and La. R.S. 14:100 (hit and run driving).

On June 12, 2019, the State filed its notice that it intended to use evidence of Fields' other crimes, wrongs, and/or acts during the trial. The State listed a previous offense from 2007 in which Fields struck another vehicle and fled the scene in a careless or reckless fashion. The State submitted that this previous offense would be offered to show proof of intent, knowledge, identity, notice, absence of mistake or accident, and modus operandi, or for any other purposes for which it may be deemed relevant and admissible.

On June 23, 2020, in open court, the trial court ruled that the previous offense was admissible if the State could prove by clear and convincing evidence that the previous offense was committed by Fields. It stated the purpose of the evidence would be to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or other reasonable purposes. The trial court noted Fields' objection for the record.

On October 4, 2021, Fields filed a motion in limine to exclude the evidence of her previous hit-and-run citation. She asserted that the evidence was prejudicial, shameful, and irrelevant. On October 11, 2021, in open court, the trial court denied the motion in limine. It ruled that it would allow the officer who wrote the previous citation to testify as long as it did not involve hearsay.

The six-member jury was chosen and the trial began on October 12, 2021. The State's first witness was Alice West, Nathaniel Nicholson's sister. She stated that she last saw her brother on the morning of the accident before he left for church. She stated that she received a phone call that evening from a doctor who told her she needed to get to the hospital because her brother had been hit and he was not looking good. She stated that when she arrived at the hospital, her brother was deceased.

Lashonda Tilmon testified that as she was leaving work the night of the accident, she saw someone lying on the side of the road, between the road and the sidewalk. She stated that she went to check on him and when she saw all the blood, she called 911. She testified that one of his shoes was in the middle of the street and it looked as if he had a bag with him.

Cpl. Morris testified that when he arrived on the scene, he took pictures of the vehicle debris, the victim's shoes and bag, and the blood on the sidewalk. Those pictures were introduced as evidence. He stated that after photographing the scene, he went to the hospital to photograph the victim's injuries, which were also introduced into evidence. He testified that his initial involvement in the case ended after taking the pictures, but he was later reassigned to the case after the previous investigator was promoted. Cpl. Morris detailed the steps he took in the investigation, which coincides with his police report narrative detailed above. He testified that based on Fields' cell phone data, her internet activity included "searching legal, looking for the wreck on the internet, things like that."

On cross-examination, Cpl. Morris testified that he did not believe the victim was walking on the sidewalk at the time of the accident; the area was not well-lit; and, the victim was wearing blue jeans, a black shirt, a black or blue hat, and no reflective material. He stated that there were no eyewitnesses to the accident and he does not know 100 percent that Fields was driving the vehicle at the time of the accident.

Jarvis Armington testified that he was friends with Fields at the time of the accident, he formerly coached her son in football, and they previously dated for a few months. He testified that Fields contacted him and stated she hit something in the road and asked if he knew anyone who does car repairs. He stated that he never saw the vehicle and she never told him that she hit someone.

Lieutenant Shannon Mack of the Bossier Parish Sheriff's Office testified that she assisted in retrieving the cell phone information for SPD. She described the process of mapping a phone's location from the data

7

received from the carrier. Through Lt. Mack, the State introduced maps showing that Fields moved from her house to the accident site and back to her house on the night of the accident.

Bobby Rothenberger, the parts manager at a Honda dealership, testified that he assisted SPD in identifying the make and model of the vehicle to which the passenger side mirror belonged. Mr. Stephenson, the owner of Louisiana Glass, testified that he called SPD to notify them that a vehicle they worked on matched the description of a vehicle described in the SPD media release. The surveillance video from Louisiana Glass was introduced and played for the jury during Mr. Stephenson's testimony.

Ronnie Odums, an employee with Louisiana Glass, testified that he heard on the news that police were looking for a vehicle that had damage on the right side, windshield, mirror, and possibly the headlights. He stated that the description resembled a vehicle that he had worked on, which had a bashed-in windshield on the passenger side, damage to the passenger side mirror, and a new mirror in the back seat of the vehicle. Mr. Odums testified that the damage to the car did not look consistent with damage caused by a baseball or baseball bat, but it looked like a large object hit the windshield, like an animal or deer. Mr. Odums stated that he told his boss, Mr. Stephenson, about the vehicle, and Mr. Stephenson contacted the police.

Joseph Lofton testified that Fields texted him the night of the accident and he went to help her with her car the next morning. He stated that he helped her pay to have her windshield fixed and drove her car to Louisiana Glass. He testified that Fields asked him to pick up some paint from Sherwin-Williams and parts from New World International. He stated that he did not ask Fields questions regarding the car and described himself as

8

"Mr. Old Reliable." Mr. Lofton testified that when questioned by the police, he told them everything about the windshield, paint, and car parts. He stated that he was not involved in the accident and only drove the vehicle to get it repaired.

Sgt. Sanchez testified that she was assigned the case the morning after the accident and she received all of the photos and evidence collected from the scene. She described the comparison of the paint chips on the side mirrors, as detailed in her report above. She further described her process of identifying the type of vehicle to which the mirror belonged. Photos taken of evidence were introduced during Sgt. Sanchez's testimony. She testified that after the media release seeking information about the accident, she received a call from the owner of Louisiana Glass and spoke with employees about a vehicle matching the description.

Sgt. Sanchez testified that she interviewed Mr. Lofton and was able to verify his statements regarding purchases with all the stores he visited. She stated that when they impounded Fields' vehicle, she could smell a strong paint odor on the vehicle.

Dr. James Traylor testified that he performed the autopsy on Nathaniel Nicholson. He was accepted as an expert in forensic pathology. Dr. Traylor's autopsy report was introduced into evidence. He stated that Mr. Nicholson had blunt force injuries to his head, which were fatal. He stated that Mr. Nicholson also had abrasions, a large contusion on the left side of his head, fractures on his skull, right side rib fractures, which punctured his lung, and a laceration to his liver. He testified that the only thing found in his system was caffeine. Dr. Traylor concluded that

9

Nicholson was not lying in the road and run over, rather he was upright when he was hit.

SPD Sgt. John Jackson testified regarding Fields' previous hit-and-run citation in 2007. He referred to his report and stated that he met up with Fields after a minor accident with another vehicle. He testified that he issued her a citation for hit and run. The State rested after the testimony of Sgt. Jackson.

The defense called its only witness, Terrell Myles, a former prosecutor in Shreveport City Court. He testified that the City did not proceed with prosecuting Fields' 2007 hit-and-run citation. He stated that the citation was ultimately dismissed.

After closing arguments and jury instructions, the jury was sent back for deliberations. The jury returned a unanimous verdict of guilty for obstruction of justice and not guilty for hit-and-run driving. The State requested that the jury be polled.

On October 19, 2021, Fields filed a motion for new trial arguing that the trial court's rulings made during the trial show prejudicial error. She argued the trial court erred in denying her motion in limine to exclude 404(B) evidence. Fields filed a motion for judgment of acquittal on the same day arguing the weight of the evidence did not support a finding of guilt beyond a reasonable doubt for the crime of obstruction of justice. She also argued in this motion that the trial court erred in denying her motion in limine to exclude 404(B) evidence. Both of these motions were denied in open court prior to sentencing. Defense then waived all sentencing delays.

At sentencing, the trial court received multiple letters and statements on Fields' behalf. The trial court stated that it found paragraph three of La.

C. Cr. P. art. 894.1(A) to be applicable—a lesser sentence would deprecate the seriousness of the offense. It stated that it had considered all factors in La. C. Cr. P. art. 894.1(B). It stated that the only aggravating circumstance was that she committed the offense in order to facilitate or conceal the commission of another offense. The trial court found no mitigating circumstances to apply. The trial court then sentenced Fields to five years at hard labor. Fields now appeals her conviction.

## DISCUSSION

*Insufficient Evidence*

Fields argues the trial court erred when it denied her motion for new trial and motion for post-verdict judgment of acquittal because there was no evidence that she attempted to conceal that her car was in an accident. She argues that Mr. Lofton's self-serving testimony was the only evidence presented that she was involved in the post-accident clean-up. She asserts the evidence was insufficient to support a finding of guilty beyond a reasonable doubt.

The State asserts that Fields' argument is nothing more than an attack on the jury's acceptance of Mr. Lofton's testimony and its credibility determination, which is entitled to great deference on appeal. The State asserts that the evidence was sufficient for the jury to infer from the circumstances that Fields had the requisite specific intent to tamper with evidence of her car being involved in a hit-and-run.

Fields argued before the trial court and on appeal that there was insufficient evidence to convict her of obstruction of justice. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any

11

rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Steines*, 51,698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Nabors*, 52,163 (La. App. 2 Cir. 7/19/18), 251 So. 3d 1214, *writ denied*, 18-1477 (La. 9/21/18), 252 So. 3d 496.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Nabors, supra*.

Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Mingo*, 51,647 (La. App. 2 Cir. 9/27/17), 244 So. 3d 629, *writ denied*, 17-1894 (La. 6/1/18), 243 So. 3d 1064. If a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S.

15:438; *Id.*  The appellate court reviews the evidence in the light most favorable to the prosecution and determines whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.  *State v. Calloway*, 07-2306 (La. 1/21/09), 1 So. 3d 417; *State v. Mathis*, 52,500 (La. App. 2 Cir. 1/16/19), 263 So. 3d 613.

The appellate court does not assess the credibility of witnesses or reweigh evidence.  *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Mathis, supra*.  A reviewing court accords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part.  *State v. Mathis, supra*.

Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.  *State v. Cooley*, 51,895 (La. App. 2 Cir. 5/23/18), 247 So. 3d 1159, *writ denied*, 18-1160 (La. 3/6/19), 266 So. 3d 899.  In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.  *State v. Jones*, 52,672 (La. App. 2 Cir. 5/22/19), 273 So. 3d 585, *writ denied*, 19-01075 (La. 10/1/19), 280 So. 3d 160; *State v. Cooley, supra*.

La. R.S. 14:130.1 states the following, in pertinent part:

A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as described in this Section:
(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal

13

investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:
(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or
(b) At the location of storage, transfer, or place of review of any such evidence.

The knowledge requirement in paragraph (A) is met if the perpetrator merely knows that an act reasonably may affect a potential or future criminal proceeding. *State v. Jones*, 07-1052 (La. 6/3/08), 983 So. 2d 95; *State v. Matthews*, 50,838 (La. App. 2 Cir. 8/10/16), 200 So. 3d 895, *writ denied*, 16-1678 (La. 6/5/17), 220 So. 3d 752. The defendant must also have tampered with evidence with the specific intent of distorting the results of a criminal investigation. La. R.S. 14:130.1(A)(1). Nothing beyond movement of the evidence is required by the statute if accompanied by the requisite intent and knowledge. *Id*.

After review under the *Jackson* standard, we conclude that the evidence was sufficient to support Fields' conviction for obstruction of justice. The jury, as finder of fact, accepted the following testimony from Mr. Lofton: Fields contacted him the day after the accident for help repairing her car; he only drove the car for repairs; he had not driven the car prior to that day; and, Fields told him where to go for parts and paint. The stores where Mr. Lofton purchased the parts and paint corroborated his story of what he purchased and that he paid with cash.

In addition to Mr. Lofton's testimony, the jury heard from investigators who stated that they found internet searches on Fields' phone for legal information and news of the accident. These internet searches, coupled with the other witnesses' testimonies about Fields' behavior after

14

the accident, are sufficient for the jury to find the requisite intent and knowledge that any vehicle repairs may affect a future investigation. Our law only requires the movement of evidence if the requisite intent or knowledge is established. Therefore, Fields' replacement of her windshield and side mirror and repainting of her vehicle, coupled with her intent/knowledge, are sufficient to establish that she violated La. R.S. 14:130.1, obstruction of justice. This assignment of error lacks merit.

*Other Crimes Evidence- La. C.E. art. 404(B)*

Fields argues that the trial court erred when it granted the State's motion to admit other crimes evidence of a minor traffic accident in 2007, which was 14 years before the trial was held in this matter. Fields asserts that the State failed to state under which 404(B) factor it sought to admit the prior accident—plan, knowledge, identity, absence of mistake, or accident. She asserts that allowing the admission of the evidence was not harmless error because it was extremely prejudicial and the jury's verdict cannot be considered "unattributable" to this error. She requests that her conviction and sentence be reversed.

The State argues that Fields has failed to show any error by the trial court in admitting the evidence of the previous hit-and-run citation. The State argues that even if it was an error to admit the other crimes evidence, which it disputes, the harmless error review applies. It asserts that Fields was not convicted of the hit-and-run so the evidence had no effect on influencing the jury to find her guilty of that charge.

Code of Evidence article 404(B)(1) embodies the settled principle that evidence of other crimes may be admissible if the state establishes an independent and relevant reason for its admission. *State v. Taylor*, 16-1124

(La. 12/1/16), 217 So. 3d 283. This evidence must have substantial relevance independent from showing defendant's general criminal character in that it tends to prove a material fact genuinely at issue. *State v. Jones*, 17-00658 (La. 10/22/19), 285 So. 3d 1074; *State v. Lee*, 05-2098 (La. 1/16/08), 976 So. 2d 109.

It is the duty of the district court in its gatekeeping function to determine the independent relevancy of this evidence. *State v. Miner*, 17-1586 (La. 1/4/18), 232 So. 3d 551; *State v. Altenberger*, 13-2518 (La. 4/11/14), 139 So. 3d 510. The district court must also balance the probative value of the other crimes, wrongs or acts evidence against its prejudicial effects before the evidence can be admitted. *State v. Miner, supra*; *State v. Henderson*, 12-2422 (La. 1/4/13), 107 So. 3d 566.

A trial court's ruling on the admissibility of other crimes evidence will not be disturbed absent an abuse of discretion. *State v. Brown*, 18-01999 (La. 9/30/21), 330 So. 3d 199, *cert. denied*, 212 L. Ed. 2d 596, 142 S. Ct. 1702 (2022); *State v. Allen*, 54,153 (La. App. 2 Cir. 12/15/21), 331 So. 3d 1101. The erroneous introduction of other crimes evidence is subject to harmless error review. *State v. Gatti*, 39,833 (La. App. 2 Cir. 10/13/05), 914 So. 2d 74, *writ denied*, 05-2394 (La. 4/17/06), 926 So. 2d 511. Trial error is harmless where the verdict rendered is "surely unattributable to the error." *State v. Jones*, 50,270 (La. App. 2 Cir. 2/10/16), 188 So. 3d 268, *writ denied*, 16-0858 (La. 5/1/17), 220 So. 3d 742.

Given the trial court's vast discretion in this regard, the trial court did not abuse that discretion in finding the prior hit-and-run charge was relevant to establish Fields' motive, knowledge, and absence of mistake or accident. Even if the trial court erred in admitting the prior charge, the error is

16

harmless. In the case before us, the jury found Fields not guilty of the hit-and-run charge and guilty of obstruction of justice. The prior charge, which the jury heard was dismissed, was not for obstruction of justice. Therefore, the guilty verdict was unattributable to any error. As previously stated, the evidence of obstruction of justice was sufficient to render this error harmless. This assignment of error lacks merit.

*Error Patent*

Our error patent review indicates that Fields' sentence is illegally lenient as the trial court did not impose a fine of not more than $10,000, as required by La. R.S. 14:130.1(B)(3). Pursuant to La. C. Cr. P. art. 882(A), an illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. However, as this Court has recognized, we are not required to take such action. *State v. Bell*, 51,312 (La. App. 2 Cir. 5/17/17), 222 So. 3d 79; *State v. Pena*, 43,321 (La. App. 2 Cir. 7/30/08), 988 So. 2d 841.

The State did not object to the error and Fields was not prejudiced in any way by the failure to impose the mandatory fine. Thus, we decline to remand the case for correction of the sentence to include a fine. *See also State v. Murray*, 42,655 (La. App. 2 Cir. 10/24/07), 968 So. 2d 916, *writ denied*, 08-0468 (La. 11/14/08), 996 So. 2d 1083.

**CONCLUSION**

For the foregoing reasons, Fields' conviction and sentence are affirmed.

**AFFIRMED.**